## THE VENEZUELA.

### INSURANCE CO. OF NORTH AMERICA et al. v. THE VENEZUELA et al.

### MERRITT et al. v. SAME.

(Circuit Court of Appeals, Second Circuit. April 18, 1893.)

1. SALVAGE—RIGHTS BETWEEN SALVORS—ADMISSION OF LIBELEE.

Separate libels for salvage were filed by the M. Co. and the I. Co., which were tried together, and, the amount which the vessel was to pay having been fixed by agreement, a controversy arose between the plaintiffs as to how the salvage should be divided, the M. Co. claiming that the I. Co. acted in subordination to it, and under its direction. *Held* that, in view of such agreement, neither company could derive any benefit from

the nondenial by the libeled vessel of allegations by the libelants showing rights of each against the other.

**2. SAME—EVIDENCE.**

The evidence having plainly shown that the M. Co. was originally employed by the owner's agents to effect a rescue, and that the I. Co. and another came in as subordinates, and that the rescue was principally due to the efforts and skill of the M. Co., the court will not reverse a decree in its favor on account of a numerical predomination of witnesses in behalf of the I. Co., testifying chiefly to an allegation which all the surrounding circumstances showed unworthy of belief.

**3. SAME—APPORTIONMENT—EVIDENCE.**

The M. Co. furnished 76 men and six vessels and materials of the value of $65,000 for 13 days, expended $3,333, and applied three times the hauling force of the I. Co. The I. Co. furnished a vessel worth $25,000, occupied 4 days, and expended about $100; and its assistant, the T., acted as a lighter for transferring the cargo to New York, about 100 miles. *Held*, that the sum of $33,500 to the M. Co., $5,000 to the I. Co., and $1,500 to the T., was a proper apportionment of the salvage. 50 Fed. Rep. 607, affirmed.

Appeal from the Circuit Court of the United States for the Southern District of New York.

In Admiralty. Libels by the Insurance Company of North America and the Atlantic & Gulf Wrecking Company against the Steamship Venezuela, her cargo, etc., (Boulton, Bliss & Dallett, claimants,) and by Israel J. Merritt and others against the same defendants. From a decree in favor of libelants Merritt and others, (see 50 Fed. Rep. 607,) defendants and libelants the Insurance Company of North America and the Atlantic & Gulf Wrecking Company appeal. Affirmed.

For the opinion of this court on the question of receiving new evidence, see 52 Fed. Rep. 873.

George A. Black, for Insurance Co. of North America.
Robert D. Benedict, for Merritt and others.
Coudert Bros., for the Venezuela.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. On February 5, 1892, the steamship Venezuela stranded upon Brigantine shoals, on the coast of New Jersey. The steamer North America, owned by the Insurance Company of North America, the steam lighter Tamesi, owned by the Atlantic & Gulf Wrecking Company, the schooner Rapidan and tug Buckley, owned by Israel J. Merritt and others, went to her rescue. Other vessels were summoned by the Merritt Company. Her cargo of coffee was put on board the Tamesi and the Rapidan during February 6th, and was taken to New York. About 10 o'clock on the morning of February 7th the Venezuela was pulled from the shoal, and proceeded to New York. On March 11, 1892, the Insurance Company of North America and the Atlantic & Gulf Wrecking Company filed their libel for salvage against the steamship and her cargo. The fifth article alleged, in substance, that the successful pulling service was performed by the North America, and that, prior to the discharge of the cargo, an anchor had been laid by the Buckley nearly six points on the

v.55F.no.3—27

starboard bow of the Venezuela, and efforts made, by hauling on that anchor, to help the vessel off, which had no effect, the anchor coming home. The answer of the claimants admitted the allegations of the fifth article, with sundry exceptions, not necessary to be specified here, and except the allegations that efforts had been made to haul the steamer off with the anchor, and that the North America pulled the steamer from the shoals, but admitted that she assisted in pulling said vessel off the shoals. It did not deny that an anchor had been laid nearly six points on the starboard bow of the steamer.

On April 7, 1892, the Merritts, under the name of Merritt's Wrecking Organization, filed a libel for salvage against the steamship. The seventh article alleged that the service of getting off the steamer and cargo was performed by the libelants; was under the sole charge and direction of their superintendent; that the Tamesi and North America were employed by him alone, the compensation to be subsequently determined by agreement of their owners and Israel J. Merritt, and that the service rendered by the North America was of some assistance in getting the vessel off, although the main work was done by the libelants' men on board the Venezuela, with their winches, cable, and anchor. The answer of the claimants made no reference to the seventh article, but admitted that libelants rendered some assistance in rescuing the steamer. On April 11, 1892, the district court ordered that the two libels should be tried together. On May 4, 1892, the trial commenced pro forma. On the next day, the value of vessel, cargo, and freight was agreed to be $903,057.82, and a substantial agreement upon the total amount of salvage, viz. $40,000, was reached. The taking of testimony was continued upon the assumption that the offer would be accepted. It was subsequently accepted by all the parties, and it was accordingly found by the district court that the amount to be awarded for the entire salvage service of all engaged therein was in open court agreed upon and fixed at $40,000. The claimants, after this agreement, did not take part in the trial, which became a contest between the salvors whether the stipulated sum of $40,000 should be apportioned, and, if apportioned, as to its proper distribution. Three questions were before the district court: (1) Whether the insurance company and the wrecking company, on the one hand, and the Merritt Company, on the other, were independent salvors, or whether the latter company was the principal and the other two were, by mutual agreement, merely subordinate and under its control. (2) If the last-named theory was true, whether the whole sum should not be paid to the Merritt Company, as the result of the agreement between the parties, which was stated in its libel. (3) The proper division of the $40,000, in case the whole sum was not to be paid to the Merritt Company.

The district court found that the insurance company and the Gulf Wrecking Company acted together; that the entire charge of the undertaking to get the ship afloat was given, both by the

agent of the owners of the Venezuela and its captain, to the Merritt Company, and that the services of the Tamesi and the North America were accepted by Capt. Chittenden, the representative of the Merritt Company, who was in charge of the work, in no other way than as assisting him, and as subordinate to him and in his employment. Upon the pleadings of the two separate libels the court was of opinion that it could not dismiss the libel of the owners of the Tamesi and North America on account of the proved agreement in regard to compensation, but must fix the amount which, upon the proofs, should be properly allowed to them out of the whole sum agreed upon. It further found that "the suggestion that the anchor and cable were laid broadly off the line of movement is not entitled to credit; nor that the anchor finally came home, and gave the great cable no efficient hold. The main reliance was upon the steady and continuous tension of the immense fifteen-inch cable of the Merritt Company." The court decreed $23,500 for the Merritt Company and $6,500 for the other libelants, who thereupon took an appeal, as did also the claimants in the Merritt Company libel, for their own protection in case the amount found in favor of the other libelants should be increased. Inasmuch as the Merritt Company has not appealed, the first and third questions are only to be considered. The opposing salvors took new proofs. The new testimony of the North America and the Tamesi was principally directed to the point of the improper location of the anchor and large cable of the Merritt Company, and the resulting inability of the cable to be of help to the Venezuela. They introduced 6 witnesses who were before the district court, and 21 new witnesses, 14 of whom were the crews of two life-saving stations near the Brigantine shoals. The numerical preponderance of new testimony is largely on the side of the appellants.

Before entering upon the subject of the effect of the testimony in the two cases, the insurance company and the Gulf Wrecking Company insist that, inasmuch as the answer of the Venezuela to their libel admits, by silence, the truth of those allegations of the fifth article which are not denied, the district judge was absolutely bound by the pleadings as to the facts so admitted, and the admissions of the answer of the Venezuela could not be overcome by any proof given by the Merritt Company on the trial of its libel. The Merritt Company could, with equal propriety, have insisted upon the same technicality, for the allegations of its seventh article were not, in substance, denied by the Venezuela. In this contention the insurance company and its cosalvor ignore entirely the circumstances of the trial of the two cases. They were tried together upon an agreement as to the total amount to be paid by the Venezuela for salvage, which thereafter disappeared as an actor, leaving the contest entirely between the contending salvors upon their opposite theories of fact, in which contest the admissions of the Venezuela performed a very inconspicuous part. The technicalities on which these appellants insist are not applica-

ble to the circumstances of this litigation, and are of no importance in view of the real nature of the trial, both in the district court and in this court.

The additional light which the appellants' new testimony furnishes upon the relative position of the salvors towards each other does not vary to an important degree the accuracy of the conclusions of the district judge. Mr. Bliss, one of the agents of the Venezuela, was informed on February ·5th that she had stranded. He promptly employed the Merritt Company to go to her assistance, which sent Capt. Chittenden, with the Rapidan and Buckley, and a quantity of wrecking material. He was put in charge of the Venezuela on the morning of February 6th. The Tamesi had . arrived the night before, but her services were then declined. After Mr. Bliss had employed the Merritt Company, he was visited by Mr. Chubb, an underwriter, representing companies which had risks on the vessel, who suggested to Mr. Bliss that it might be well for him to communicate with the Insurance Company of North America, also an insurer upon this vessel, to have them send their tug to her help. Mr. Bliss agreed to this, and the insurance company was communicated with by telephone, and requested by Chubb, in · the presence of and in behalf of Bliss, to send the tug. Two telegrams were sent by a clerk of the insurance company to Capt. Gibbons of the North America. The first was as follows: "Steamer Venezuela ashore Brigantine Shoals. Wire when you leave for her assistance. Large interests. Ins. of North America." The second was as follows: "Don't delay getting to Brigantine. Our interests are heavy. Platt."

The North America reached the Venezuela on the morning of February 6th, and her captain showed the two telegrams to Capt. Chambers, of the Venezuela, who made no arrangement with him. Subsequently Capt. Chittenden. and Capt. Townsend of the Tamesi, and president of the Gulf Wrecking Company made the agreement which was found by the district court, and under which the three salvors subsequently worked together during the continuance of the services. Townsend had the right to contract in Gibbons' behalf. It is manifest that, as between the three, the Merritt Company had, by mutual understanding, the precedence. It took the responsible management; it directed all the movements of the vessels; it was in charge and control of the enterprise. Although the North America originally was sent to ·the Venezuela at the instance of Mr. Bliss, and, as the telegrams show, for the protection of the insurance company, and went as a salvor, she did not take part upon her arrival as an independent salvor, but as subordinate to, and an assistant of, and under the control of, the Merritt Company. Her owners and those of the Tamesi are entitled to salvage, but the position of each during the services was far inferior to that of the Merritt Company. In the language of the district judge:

"The conduct of the work itself was in plain conformity with this view. Capt. Chittenden directed everything,—the examination of the ground by

soundings; the determination in which direction it was best to move; the location of the anchor and the purchases, and the arrangement of the cables; the unlading of part of the cargo, and the methods and times of hauling on the ship. In all these things the other vessels took no part. As respects the direction in which to move, they expressed a contrary opinion; but the speedy success of Capt. Chittenden's plan fully justified his judgment and skill."

The strength of the efforts of these two appellants has been expended in an attempt to satisfy this court that the Venezuela was pulled from the beach by the North America; that the cable of the Merritt Company was anchored in the wrong direction from the steamship, and was of no avail; and, therefore, that the amount of their respective decrees should be materially changed. Whether the conclusions of the district judge upon the testimony before him were right or not, it is claimed that the new testimony establishes beyond question the truth of the allegations of the fifth article of the libel of the insurance company and Gulf Wrecking Company. The oral testimony is, as usual, conflicting. The number of witnesses on the side of the two libelants who have appealed largely predominates, and, if questions of fact were to be decided by the length of the respective lists of witnesses, the appellants would be successful; but in this case, as in almost every other, a known surrounding state of facts and circumstances controls and determines the weight to be given to imperfect memories. The vessel was headed to the southeast. It was properly determined that she must go off bow foremost, for that was the nearest way to the deepest water. The manifest purpose was to lay the anchor in the deepest water, which was in fact southeast by south from the ship. Capt. Chittenden's experience told him, what is in accordance with truth, that the steady and continuous pull of a taut and firmly anchored large cable has a much more important and beneficial effect in working off a vessel stranded upon smooth sand than has the necessarily interrupted and less uniform pull by a tug. He had been in the wrecking business for 31 or 32 years, and had long been a superintendent in wrecking operations for the Merritt Company. He intended to put the anchor and cable where their power would be most useful, and not where they would be useless. The beneficial position would be south southeast of the vessel in deep water. The position in which the majority of the libelants' witnesses say it was laid, in a south-westerly direction from the vessel, and nearly six points on her starboard bow, would be a useless position. An attempt to prove that Chittenden put the anchor at that point is an attempt to prove the highly improbable; and it is not strange that the memory of witnesses, both honest and intelligent, who suggest such a theory, turns out to have been at fault. The captain and the mate of the Venezuela each orally testifies that the anchor was laid south southwest from the ship. The latter entered in the log which he daily kept that it was laid south southeast, and each swore accordingly in the protest which was made from the log, although the attention of the mate was called to that particular point by the question of the scrivener in regard to the

true character of the initials in the log. It is of course possible that the mate made a mistake, or a slip of the pen, in entering "S. S. E." in the log, as he now says that he did; but the probabilities are that he was then correct, and that his memory is now imperfect. It would be wearisome to recount the testimony of the different witnesses, and all the details which occurred, but it is sufficient to say that the attempt to prove an allegation which the surrounding circumstances show was one most unlikely to be true, and which is not credible, has failed, as has also the attempt to show that the cable was not taut, and did not accomplish its legitimate work. The theory upon which the district judge divided the sum of $40,000 was a correct one, and is sustained by the facts stated in his opinion, which are as follows:

"The outfit provided by the Merritt Co. for the work consisted of 6 vessels and 76 men, including Lovett and Wyman, dispatched on the 6th. The outfit of the other libelants was 2 vessels and 29 men. The value of the vessels and materials of the former was about $65,000; of the latter, about $40,000; but of the latter the North America, only worth $25,000, was used in hauling off the ship, the Tamesi being employed as a lighter only, and towed with her own cables by the Buckley. The whole time occupied both at the shoals and in going and returning, was for the vessels of the Merritt Co. equal to a little over 13 days, including also going back for the cables and anchor that were slipped when the Venezuela went ashore. The time of the Tamesi and North America, including going and returning, was about 4 days. The expenditures of the Merritt Co. were about $3,333; those of the other two vessels, so far as proved, about $100. The hauling force applied to the Venezuela by the Merritt Co. with their cable and the tug Buckley was about three times that of the North America. Taking all these elements together, the means employed in getting off the ship stands in favor of the Merritt Co. as against the North America about in the ratio of from 2 or 3 to 1, so that, if the two occupied the same status as independent salvors, the Merritt Co. should receive about 2½ or 3 parts to the North America's one. But, as the North America came in merely as a subordinate and temporary helper to the Merritt Co., one half the share of an independent salvor, or from one seventh to one eighth, will, I think, be a fair adjustment of the North America's compensation as between themselves."

Five thousand dollars were awarded to the North America, $1,500 were allowed to the Tamesi and $33,500 to the Merritt Company, and the decrees are affirmed, with costs to the appellees in the appeal of the insurance company and the Gulf Wrecking Company, and without costs in this court in the appeal of the Venezuela.